**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**LAUREN A. WILLIAMS,**
on behalf of her minor son,
J.M.M.,

        **Plaintiff,**                      **CIVIL ACTION NO. 17-cv-12964**

        **v.**                                  **DISTRICT JUDGE SEAN F. COX**

**COMMISSIONER OF**                 **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Lauren A. Williams seeks judicial review of Defendant Commissioner of Social Security's determination that her minor son is not entitled to social security benefits for his mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 10) and Defendant's Motion for Summary Judgment (docket no. 12). The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 2.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

**I.**      **RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 10) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 12) be **GRANTED**.

## II. PROCEDURAL HISTORY

Plaintiff, acting on behalf of her minor son (hereafter, "Claimant"), filed an application for supplemental security income on December 9, 2014, alleging that Claimant has been disabled since August 10, 2014, due to attention deficit hyperactivity disorder (ADHD) and a learning disability. (TR 128-33, 151.) The Social Security Administration denied Claimant's application on February 25, 2015, and Plaintiff requested a *de novo* hearing. (TR 62-70, 77-79.) On May 25, 2016, Plaintiff appeared with Claimant's representative and testified at the hearing before Administrative Law Judge (ALJ) John J. Rabaut. (TR 46-61.) The ALJ subsequently issued an unfavorable decision on July 28, 2016. (TR 27-38.) The Appeals Council declined to review the ALJ's decision (TR 1-7), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court.

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 10 at 9-10) and the ALJ (TR 31-33) have set forth detailed, factual summaries of Claimant's medical record, school record, and the hearing testimony. Defendant adopts the ALJ's recitation of the facts. (Docket no. 12 at 4.) Having conducted an independent review of Claimant's medical record, school record, and the hearing transcript, the undersigned finds that there are no material inconsistencies between these recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Claimant was a school-age child on the date the application was filed and at the time of the ALJ's decision; that Claimant had not engaged in substantial gainful activity since the application date of December 9, 2014, and that Claimant suffered from the following severe impairments: ADHD, oppositional defiant disorder, and learning disorder. (TR 30.) Next, the ALJ found that Claimant's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 30-31.) The ALJ further found that Claimant did not have an impairment or combination of impairments that functionally equaled the severity of the listings. (TR 31-38.) Therefore, the ALJ found that Claimant had not been disabled under the Social Security Act since December 9, 2014, the date the application was filed. (TR 27, 38.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.

*See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

  **B.**  **Framework for Childhood Social Security Determinations**

A child will be considered disabled if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). To determine whether a child's impairments result in marked and severe limitations, Social Security Administration (SSA) regulations prescribe a three-part evaluation:

  (1)  A child will be found "not disabled" if he engages in substantial gainful activity;

(2) A child will be found "not disabled" if he does not have a severe impairment or combination of impairments'

(3) A child will be found "disabled" if he has an impairment or combination of impairments that meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

20 C.F.R. § 416.924(a)-(d).

To determine whether a child's impairments functionally equal a listing, the SSA assesses the functional limitations caused by the child's impairments. 20 C.F.R. § 416.926a(a). To do so, the SSA considers how a child functions in six domains:

(1) Acquiring and using information;

(2) Attending and completing tasks;

(3) Interacting and relating with others;

(4) Moving about and manipulating objects;

(5) Caring for yourself; and

(6) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1). If a child's impairments result in "marked" limitations in two domains, or an "extreme" limitation in one domain, the impairment functionally equals the listing, and the child is considered disabled. 20 C.F.R. § 416.926a(d).

**C. Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994)

5

(citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration."  *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four because the ALJ (1) "committed reversible error in failing to find that [Claimant's] ability to care for himself, acquire and use information and complete tasks was not markedly limited;" (2) "committed reversible error in according little if any weight to the opinion of [Claimant's] teachers, as such opinions must be considered in determining how [Claimant's] impairments affect functions, in accordance with [Social Security Ruling (SSR)] 09-2p;" and (3) "violated SSR 96-8p by failing to consider the effect of [Claimant's] impairments of Oppositional Defiant Disorder and [ADHD]."  (Docket no. 10 at 4, 7, 13-20.)

        1.    *The ALJ's Assessment of Claimant's Ability to Care for Himself, Acquire and Use Information, and Complete Tasks*

Plaintiff argues that the ALJ "committed reversible error in failing to find that [Claimant's] ability to care for himself, acquire and use information and complete tasks was not markedly limited."  (Docket no. 10 at 13.)  But the ALJ did not fail to find that Claimant's abilities were not markedly limited; rather, the ALJ did indeed find that Claimant's abilities were not markedly limited.  (*See* TR 33-38.)  Plaintiff's argument therefore fails.  Nevertheless, the Court presumes that Plaintiff inadvertently used a double negative in the above-quoted argument, and that she actually intended to argue that the ALJ erred in failing to find that Claimant's

6

abilities *were* markedly limited. The Court will therefore proceed to address this revised argument.

A claimant's ability to care for himself refers to "how well a child maintains a healthy emotional and physical state, including how well a child satisfies his physical and emotional wants and needs in appropriate ways." (TR 37 (citing 20 C.F.R. § 416.926a(k) and SSR 09-7p).) A claimant's ability to acquire and use information "concerns how well a child is able to acquire or learn information, and how well a child uses the information he has learned." (TR 33 (citing 20 C.F.R. § 416.926a(g) and SSR 09-3p).) A claimant's ability to attend and complete tasks "considers how well a child is able to focus and maintain attention, and how well he is able to begin, carry through, and finish activities, including the mental pace at which he performs activities and the ease of changing activities." (TR 34 (citing 20 C.F.R. § 416.926a(h) and SSR 09-4p).)

The ALJ found that Claimant has less than marked limitations in his abilities to care for himself, acquire and use information, and attend and complete tasks. The ALJ supported his determination regarding each domain, respectively, as follows:

> In a December 2014 daily activities report, Ms. Williams reported the claimant was able to make his bed and help prepare meals. Ms. Williams also reported the claimant was able to care for [his] own personal needs but still required some help in bathing and the bathroom. (Ex. 2E).

> During a January 2015 treatment, the claimant's mother reported the claimant had been doing fine since increasing his medication dosage and reported he could stay focused in the classroom without disruptive behavior (Ex. 10F/23). The claimant's mother also reported [that] the claimant's school reported they had seen the claimant improve with medication treatment (Ex. 10F/23). As recently as March 2016, the claimant's mother reported the claimant was doing fine at home and school. On exam during therapy, the claimant presented as able to focus. (Ex. 10F/106-107).

> In a December 2014 daily activities report, Ms. Williams reported the claimant was able to help prepare meals and mow the lawn. (Ex. 2E).

7

(TR 34, 35, 37.)

Plaintiff does not directly challenge the accuracy of the ALJ's findings or characterization of the evidence cited above; rather, she argues that "[t]he overwhelming weight of the evidence supports a marked limitation in [Claimant's] ability to attend to and complete tasks in addition to use and acquire information." (Docket no. 10 at 15.) In support of this assertion, Plaintiff relies several pieces of evidence, such as a questionnaire completed by Claimant's teacher, Ms. Zwolan, on January 5, 2015; an August 5, 2014 treatment record from Development Centers, Inc., which reflects Plaintiff's and her boyfriend's reports that Claimant had problems "sitting still, following directions, listening, [was] very defiant, [and had a] very hard time paying attention;" a September 17, 2014 report from Detroit Public Schools indicating that Claimant needed help with listening, completing work, following directions, working independently, and showing self-control; the Global Assessment of Functioning (GAF) score of 50 assigned to Plaintiff by Dr. Santosh Rastogi; Plaintiff's hearing testimony that medication had not improved Claimant's problems; and a summary of Claimant's January 13, 2015 educational testing results, which reveal that Claimant's overall level of achievement, fluency with academic tasks, and ability to apply academic skills was low. (*Id.* at 15-16 (citing TR 52, 159-60, 203, 216, 270, 377).) Plaintiff argues that it is "proven and clear" from this evidence that Claimant has at least marked limitations in the domains of task completion and acquirement of information, which evidence the ALJ arbitrarily ignored and thereby committed reversible error. (*Id.* at 16.)

A plain reading of the ALJ's decision, however, demonstrates that the ALJ did consider much of the evidence cited by Plaintiff. The ALJ considered Claimant's January 2015 test

8

results and noted that he obtained an average score in math calculation but scores in the low average range in brief reading, broad mathematics, brief mathematics, written expression, and brief writing. (TR 32 (citing TR 377).) The ALJ also addressed Dr. Rastogi's December 2014 opinion that Claimant had a GAF score of 50, but he accorded it little weight because of its lack of relevance to Claimant's long-term mental health history. (TR 33 (citing TR 270).) And as further discussed below, the ALJ considered and assessed the questionnaires completed by Claimant's teacher and discounted her opinions regarding Claimant's abilities to acquire and use information and attend and complete tasks on the basis that they were inconsistent with the medical evidence. (TR 32-33 (citing TR 158-65, 174-81).) Additionally, the ALJ discussed Claimant's August 5, 2014 treatment record and noted that Plaintiff reported some improvement in Claimant's ability to listen to directions. (TR 32 (citing TR 216).) Furthermore, the ALJ considered Plaintiff's hearing testimony. (TR 31.)

As Defendant points out, the ALJ also considered and relied upon evidence not cited by Plaintiff. For example, the ALJ discussed a December 2014 daily activities report completed by Plaintiff, in which she reported that Claimant was able to get along well with his siblings, make his bed, help prepare meals, and mow the lawn, and that Claimant did not have behavior problems in school. (TR 32 (citing 140-43).) He also considered Claimant's treatment records from Development Centers, Inc., noting that Claimant had been diagnosed with ADHD, oppositional defiant disorder, and learning disorder, and treated with mental health medication and therapy. (TR 32.) The ALJ pointed out that Claimant's ADHD medication dosage was increased in October 2014, and thereafter, Plaintiff repeatedly reported improvement in Claimant's ADHD symptoms. The ALJ also pointed out Plaintiff's reports that Claimant's school performance had improved, Claimant had been very calm and attentive in social

9

environments with improvement in math and reading, Claimant could stay focused in the classroom without disruptive behavior, and that as recently as March 2016, Claimant was doing fine at home and school. (TR 32.) Furthermore, the ALJ discussed and gave great weight to the opinion of the state agency medical consultant, who opined that Claimant had less than marked restrictions in acquiring and using information, attending and completing tasks, interacting with others, and health and physical well-being, and no restrictions in moving objects or caring for himself. (TR 33 (citing TR 63-70).)

Essentially, Plaintiff has pointed to evidence in the record that could support a determination contrary to the ALJ's and invites the court to reweigh the evidence and substitute its own judgment for that of the ALJ. Plaintiff's argument fails, as it is not the court's role to resolve conflicts in the evidence. *See Brainard*, 889 F.2d at 681 (citation omitted). And while Plaintiff is able to marshal evidence that supports her position, she is not entitled to remand simply because she can point to evidence in the record that might support a different conclusion than was reached by the ALJ. *See Her v. Comm'r*, 203 F.3d 388, 389–90 (6th Cir. 1999). Indeed, the evidence cited by Plaintiff does tend to support Plaintiff's assertions, but nothing in Plaintiff's argument gives the undersigned a basis for recommending that the ALJ's well-reasoned opinion be rejected, as there is also substantial evidence supporting the ALJ's decision. At most, Plaintiff has shown that the ALJ's decision falls within the ALJ's zone of choice, where, if the ALJ's decision is supported by substantial evidence, it must be affirmed, even if substantial evidence also supports the opposite conclusion. *See Her*, 203 F.3d at 389-90; *Mullen*, 800 F.2d at 545 (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). Plaintiff's Motion should therefore be denied with regard to this issue.

### 2. *The ALJ's Assessment of Claimant's Teacher's Opinions*

Plaintiff argues that the ALJ "committed reversible error in according little if any weight to the opinion of [Claimant's] teachers, as such opinions must be considered in determining how [Claimant's] impairments affect functions, in accordance with SSR 09-2p." (Docket no. 10 at 17-18.) Social Security Ruling 09-2p "provides policy interpretations and consolidates information from [the SSA's] regulations, training materials, and question-and-answer documents about documenting and evaluating evidence of a child's impairment-related limitations and related issues." SSR 09-2p, No. SSA-2008-0062, 2009 WL 396032, at *1 (S.S.A. Feb. 18, 2009). The Ruling explains that evidence from non-medical sources that know and have contact with the child, such as teachers, is very important to understanding the severity of a child's impairment(s) and how it affects day-to-day functioning. *Id*. at *4. "Therefore, [the ALJ] will consider evidence from such non-medical sources when [he] determine[s] the severity of the child's impairment(s) and how the child typically functions compared to children of the same age who do not have impairments." *Id*.

The ALJ considered and assessed the opinion of Claimant's teacher, Kathy Zwolan, as follows:

> In January 2015, Kathy Zwolan, the claimant's teacher, issued a statement regarding the claimant's overall functioning. Ms. Zwolan opined the claimant would have a very serious problem acquiring and using information. He would have a serious problem attending and completing tasks. He would have no difficulty interacting with others, moving objects, or caring for himself. (Ex. 5E). Kathy Zwolan issued another statement in April 2015 regarding the claimant's functioning. Ms. Zwlon [sic] noted that the claimant still needed teacher assistance with his work but had shown improvement since the start of the school year. Ms. Zwolan opined the claimant would have a serious problem acquiring and using information. He would have an obvious problem attending and completing tasks. He would have a slight problem interacting with others and caring for himself. He would have no difficulty moving objects. (Ex. 8E). I accord partial weight to Ms. Zwolan's January 2015 and April 2015 statements in terms of her recommendation for no restriction [in] moving objects or caring for

11

> himself and a slight problem interacting with others. However, I accord little weight to Ms. Zwolan's remaining restrictions because the limitations are excessive in light of the objective medical record, including the claimant's presentation with a pleasant mood, appropriate affect, and intact memory during therapy (Ex. 4F/34, 10F/4).

(TR 32-33.)

Plaintiff argues that "[w]hile the ALJ acknowledged some of the statements provided by [Claimant's] teacher, he seemed to arbitrarily disregard others," and "the ALJ's failure to seriously consider all feedback provided by [Claimant's] teacher[] is reversible error." (Docket no. 10 at 17, 18.) Specifically, Plaintiff argues that the ALJ erred by failing to discuss the following comments and opinions provided by Ms. Zwolan in the questionnaires that she completed on January 5, 2015 and April 16, 2015 – that Claimant needed a lot of one-on-one teacher assistance with his schoolwork; had trouble comprehending written directions; had serious problems with learning new material, recalling and applying previously-learned material, and completing work accurately; and had slight-to-obvious problems carrying out single- and multi-step instructions and working at a reasonable pace. (*Id*. at 17-18 (citing TR 159-60, 175).) These comments and opinions represent Ms. Zwolan's detailed support for her general opinions that Claimant had problems functioning in the domains of acquiring and using information and attending and completing tasks. (*See* TR 159-60, 175.)

It is indeed true that the ALJ did not explicitly discuss all of Ms. Zwolan's detailed comments and opinions, but "it is well settled that '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 507-08 (6th Cir. 2006) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir. 1999)). Moreover, it is evident that the ALJ considered the comments and opinions at issue, because Ms. Zwolan's detailed

comments and opinions are located on the same pages as her general opinions, and the ALJ explicitly discussed and assessed Ms. Zwolan's general opinions in the decision. Notably, Plaintiff does not challenge the ALJ's reasons for discounting Ms. Zwolan's opinions. Furthermore, and contrary to Plaintiff's assertion, the ALJ explicitly considered Ms. Zwolan's comment that Claimant needed assistance with his work in the decision by stating, "Ms. Zwlon [sic] noted that the claimant still needed teacher assistance with his work but had shown improvement since the start of the school year." (TR 33 (citing TR 175).)

The above discussion demonstrates that the ALJ considered Ms. Zwolan's opinions, which is all that SSR 09-2p required him to do. There is no error here.

### 3. *The ALJ's Consideration of Claimant's Oppositional Defiant Disorder and ADHD*

Plaintiff actually presents two arguments in this section of her brief, both of which lack merit. First, Plaintiff argues in conclusory fashion that the ALJ failed to develop the record as mandated by 20 C.F.R. § 416.912. (Docket no. 10 at 19.) Under 20 C.F.R. § 416.912,

> Before [the ALJ] make[s] a determination that you are not disabled, [he] will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application.

20 C.F.R. § 416.912(d) (eff. until Mar. 27, 2017). Here, Plaintiff alleges that Claimant has been disabled since August 10, 2014, only four months before the application date of December 9, 2014. Accordingly, the ALJ was not required to develop Claimant's medical record for the 12 months preceding the application, and Plaintiff's argument fails in this regard.

Plaintiff also argues that the ALJ did not consider the impact of Claimant's ADHD and oppositional defiant disorder in the decision. (Docket no. 10 at 18, 19-20.) In making this

13

argument, Plaintiff asserts that Claimant's medical records include diagnoses of ADHD and oppositional defiant disorder, defines the two disorders, recites some of the general symptoms of the disorders, and recites some of the symptoms that Claimant experienced as a result of those disorders. (*Id*. at 19-20.) But Plaintiff's reasons for setting forth this argument are perplexing, as the ALJ acknowledged Plaintiff's diagnoses of ADHD and oppositional defiant disorder in the decision and found that they are two of Claimant's three severe impairments. (TR 30, 32.) Moreover, most of the medical and educational records and hearing testimony considered by the ALJ in the decision concern Claimant's ADHD and oppositional defiant disorder and the symptoms and effects thereof. Accordingly, contrary to Plaintiff's assertion, the ALJ did in fact consider the impact of Claimant's ADHD and oppositional defiant disorder. Plaintiff's argument is therefore unavailing, and her Motion should be denied accordingly.

## VI. CONCLUSION

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 10) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 12).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with

specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 20, 2018        s/ Mona K. Majzoub
                              MONA K. MAJZOUB
                              UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: August 20, 2018        s/ Leanne Hosking
                              Case Manager